RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0282P (6th Cir.)
File Name: 01a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KATHLEEN PEARCE, on behalf
of herself and as next of kin to
Jeffrey Pearce, and on behalf
of the minor children of
Kathleen Pearce and Jeffrey
Pearce, and ANNETTE HARRIS,
on behalf of herself and as
next of kin to Keith D. Harris,
*Plaintiffs-Appellants,*

No. 00-5305

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00278—Robert L. Echols, Chief District Judge.

Argued: May 1, 2001

Decided and Filed: August 23, 2001

Before: JONES, SILER, and GILMAN, Circuit Judges.

1

Corps was not negligent because it satisfied its duty of care and the decedents were the proximate cause of their own deaths, we need not consider the effect of the TRUS on the Corps' liability in admiralty.

**AFFIRMED.**

———————————

**COUNSEL**

**ARGUED:** Douglas S. Johnston, Jr., BARRETT, JOHNSTON & PARSLEY, Nashville, Tennessee, for Appellants. Stephen R. Campbell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Douglas S. Johnston, Jr., BARRETT, JOHNSTON & PARSLEY, Nashville, Tennessee, for Appellants. Stephen R. Campbell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————————

**OPINION**

———————————

SILER, Circuit Judge. Plaintiff Kathleen Pearce, on behalf of herself, her deceased husband, and her minor children, along with plaintiff Annette Harris, on behalf of herself and her deceased husband, filed suit under the Suits in Admiralty Act ("SIAA") against the defendant United States. The plaintiffs alleged that the negligent operation of the Old Hickory Lock and Dam ("Old Hickory") by the U.S. Army Corps of Engineers ("Corps") led to the drowning deaths of their husbands. After a bench trial, the district court found that the Corps was not negligent in its operation of Old Hickory and granted a judgment for the United States. Plaintiffs appeal that judgment. We affirm.

### I. Background

Old Hickory, located on the Cumberland River above Nashville, Tennessee, is owned and operated by the United States through its agency, the Corps. The general public uses the waters above and below the dam for recreation, particularly fishing.

are charged with knowledge of the information contained on a navigational chart. *See Gemp*, 684 F.2d at 408. The district court's factual findings were sound and, based on those findings, its conclusion that the Corps was not negligent because it satisfied its duty to warn of danger was not in error. *See Graves*, 872 F.2d at 136 (holding, in a SIAA action, that the Corps satisfied its duty of care and was not negligent where "the warning sign on the dam, the notices published in the paper, and the navigational guidebooks of the Corps were adequate warning of the danger").

### ii) Proximate Cause

Alternatively, the plaintiffs were not able to establish the proximate cause element of their admiralty negligence claim. The decedents' reckless behavior, not any action or inaction by the Corps, was the proximate cause of their deaths. The district court found that the sole cause of the decedents' accident was their failure to use reasonable care for their own safety. Specifically, it found that the decedents 1) were not wearing life jackets, as required by Tenn. Comp. R. & Regs. 1660-2-7-.11(2), at the time of the accident; 2) ignored nine clearly-visible warning signs; 3) ignored "Danger Zone" markings on the navigational chart; 4) rode over boils, which demonstrated open danger, on their way to the turbine and, once inside the turbine, fished within one hundred yards of active boils; and 5) secured their boat to the dam while fishing. The district court's factual findings and conclusion that the Corps was not negligent because the decedents' reckless behavior was the proximate cause of their deaths were not clearly erroneous. *See id.* at 136 (holding that the Corps was not negligent where boaters' behavior -- traveling too fast, failing to keep lookout, and failing to wear a life jacket -- was the proximate cause of their accident).

### iii) Tennessee Recreational Use Statute

Finally, the plaintiffs contend that the district court erred by concluding that the TRUS, Tenn. Code Ann. §§ 70-7-101 through 70-7-104, immunized the Corps from liability, even if it was negligent. Having already held, however, that the

On July 29, 1997, Jeffrey Pearce and Keith Harris ("decedents") went fishing at Old Hickory. Throughout their fishing trip, they were observed by other fishermen. At approximately 4:00 p.m., the decedents launched Pearce's boat from a boat ramp located below the dam and, not wearing life jackets, drove the boat upriver toward the dam's powerhouse. Traveling through turbulent water containing "boils," which were created by discharges of water from operating turbines, they steered their boat to an area below the dam called the "taildeck." After arriving at the taildeck, they drove their boat into a turbine opening to fish. Once inside the dam opening, they secured their boat to the dam by tying it to a nail that was driven into the dam structure.

Nine warning signs were along the route from the boat ramp, where the decedents launched their boat, to the dam opening, where they fished. Two large signs read, "Warning: Life Jacket Required from Here to Dam." Four read, "Danger: Water Subject to Sudden Rise and Violent Turbulence." And three more, which were posted on the dam itself, read, "Turbulent Waters: Keep Out." Additionally, a navigational chart clearly marked the area above and below the dam, including the turbine openings, as "Danger Areas." This navigational chart was available to the public when the decedents went fishing on July 29, 1997.

Despite warning signs and the navigational chart that warned of danger, the decedents entered the dam opening and fished from their boat. There were no boils in the spot where they fished but, nonetheless, boils were "all around the dam." Other fishermen noticed that, while fishing inside the dam opening, the decedents were not wearing life jackets, which were required under Tennessee law, but none could say whether the decedents were wearing life jackets at the exact moment of their accident. The district court found that "the evidence strongly suggests that neither of the Decedents was wearing a life jacket immediately prior to the accident."

At approximately 6:20 p.m., the dam's shift operator turned the turbines off the condensing mode, which involved

opening the gates to allow water to enter the turbine chambers. This procedure created turbulence and a powerful undertow. Hearing a grating sound that signaled to him that the gates were opening and a release was imminent, another fisherman yelled to the decedents to get out of the dam opening. The decedents were unable to start their boat's engine or untie their boat from the dam and, as a result, their boat was washed upward by the turbulence, they were thrown out, and they drowned. When their bodies were recovered by rescue workers, they were not wearing life jackets.

Their representatives sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), and the SIAA, 46 U.S.C. §§ 741-752, alleging that the Corps' negligent operation of the dam caused the drowning deaths of their husbands. The plaintiffs alleged that the Corps was negligent in failing to: 1) install adequate signs warning about the changing nature of turbulence; 2) restrict recreational users from using the waters below the dam; 3) take reasonable steps to audibly warn those in a danger zone of an impending release; and 4) install working warning sirens.

After a bench trial, the district court held that the United States was not negligent and, hence, not liable for the deaths because: 1) the plaintiffs failed to prove by a preponderance of the evidence that the Corps breached its duty to warn adequately of danger at the dam; 2) the proximate cause of the deaths was decedents' failure to use reasonable care for their own safety by ignoring warning signs, failure to avoid open and obvious danger indicated by boils in the water, and failure to wear life jackets; and 3) even if the Corps was negligent, the Tennessee Recreational Use Statute ("TRUS") precluded liability.

## II. Standard of Review

"Generally, when reviewing a district court's determination of negligence in an admiralty action, this court is not to overturn that finding unless it is clearly erroneous.... A finding is 'clearly erroneous' if the reviewing court is left

High waters damaged the horn in March 1997, and power to it was turned off until repairs were completed in August 1997. Thus, the warning horn system was not working on July 29, 1997, the date of the decedents' accident.

The Corps' failure to have a working warning horn system in place once it determined to install one did not violate the Good Samaritan Doctrine. The Good Samaritan Doctrine would hold that even if the Corps had no duty to install horns, which it did not, if it undertook to perform that safety function, it became obligated to do so without negligence. *See Callas*, 682 F.2d at 622 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955)). *See also Good v. Ohio Edison Co.*, 149 F.3d 413 (6th Cir. 1998) (recognizing the Good Samaritan Doctrine). The Corps' failure to have a working horn system on the date of the decedents' accident was not negligence. First, the Corps had previously determined that warning signs provided ample warning to those recreating at the dam. And, second, the system was not active because of high water damage. The district court found that "the Defendant's failure to have the warning horn system repaired prior to the date of the accident does not constitute breach of the duty to warn."

Even without a warning horn system, the Corps did not breach its duty of care. Because no breach of duty occurred, the plaintiffs could not establish the second element of their admiralty negligence claim. The district court determined that there was no negligence on the part of the Corps because, while it had a duty to warn boaters of the dangers around the dam, it satisfied that duty. The factual findings that led the district court to reach this conclusion are not clearly erroneous because there was credible evidence on the record to support them. Specifically, the district court analyzed photographic evidence, charts, and testimony of other fishermen to conclude that nine clearly-visible warning signs positioned on the river from the boat ramp to the dam itself and an available navigational chart that highlighted the taildeck area of the dam as a "Danger Zone" adequately warned the decedents of the dangers of fishing at the dam. As a matter of law, boaters

with the definite and firm conviction that a mistake has been made after examining all of the evidence." *Graves v. United States*, 872 F.2d 133, 136 (6th Cir. 1989) (citations omitted). Questions of law are reviewed de novo. *See Johnson v. Jones*, 149 F.3d 494, 499 (6th Cir. 1998).

### III. Discussion

### A) Applicable Law

"Claims for which a remedy is available under SIAA are not cognizable under FTCA." *Estate of Callas v. United States*, 682 F.2d 613, 619 n.7 (7th Cir. 1982). The "SIAA permits suits in admiralty against the United States '[i]n cases where... if a private person or property were involved, a proceeding in admiralty could be maintained....' That is, it renders the United States liable to suit to the same extent that a private person would be liable." *Faust v. South Carolina State Highway Dep't*, 721 F.2d 934, 938 n.2 (4th Cir. 1983) (quoting *Lane v. United States*, 529 F.2d 175, 179 (4th Cir.1975)). In *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 121 S. Ct. 1927, 1933 (2001), the Supreme Court held that wrongful death actions based on negligence are actionable in admiralty. Because the SIAA provides a remedy for the plaintiffs' claims, the district court correctly dismissed the plaintiffs' FTCA claims. Accordingly, the only claims before us are SIAA claims.

The plaintiffs argue that, in analyzing its claims under the SIAA, we should apply Tennessee state law. However, general admiralty law, not state law, governs claims resulting from maritime deaths in territorial waters. *See National Enters., Inc. v. Smith*, 114 F.3d 561, 565 (6th Cir. 1997) ("When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it."). To be successful in its suit against the United States, the plaintiffs needed to establish all elements of a negligence cause of action in admiralty. Those elements, "which are essentially the same as land based negligence under the common law," are: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of

---

maintain a working audible horn warning system at Old Hickory on the date of the decedents' accident. ER 341 was created to "provide for the establishment of restricted areas upstream and downstream of certain project structures, standard criteria for determining the extent of these restricted areas, and guidance for implementation." "Project structures" included all Corps-owned locks and dams, such as Old Hickory. Furthermore, ER 341 provided guidance for the sizing of restricted areas and required Corps Commanders to prepare a schedule for implementing restricted area plans by August 1, 1991. Implementation was to be completed by February 1, 1996. Operational management plans were required to contain provisions for marking restricted areas, but further safety measures to restrict public entry into restricted areas -- including buoys, floats, physical barriers, and audible warnings -- were discretionary.

The question that we must resolve is whether ER 341 was a substantive agency regulation that has the force and effect of law, an issue that no court has previously decided. ER 341 was published in neither the Code of Federal Regulations nor the Federal Register. *See United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000) (holding that Corps Engineering Regulation 1165-2-121 was not binding on the Corps based on the regulation's text, stated purpose, and the fact that it was not published in either the Code of Federal Regulations or the Federal Register). Because we read ER 341 not as a true regulation, but as part of an internal operating manual, we hold that ER 341 was not a substantive agency regulation and, accordingly, that it did not create a duty for the Corps to maintain a warning horn system at Old Hickory. Again, the *Pennsylvania* doctrine does not apply.

Even though ER 341 did not require installation of a warning horn system, the Corps decided to install one to alert the public as to impending discharges. Installation of Old Hickory's warning horn system began in September 1995 and was completed and tested for operation in August 1996. It was then placed on by-pass until signs that explained its function to fishermen could be manufactured and installed.

that duty of care; 3) a causal connection between the offending conduct and the resulting injury, which is called "proximate cause"; and 4) actual loss, injury or damage suffered by the plaintiff.   1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5-2, at 170 (3d ed. 2001) (footnotes omitted).

### B)  Discussion

The crux of the plaintiffs' appeal is that the Corps' failure to have a working audible horn warning system at Old Hickory on the date of the decedents' accident constituted negligence per se.  We reject the negligence per se argument and affirm the district court's verdict in favor of the Corps. The bases of our holding are that the Corps did not breach any duty owed to the decedents, and its actions or inactions were not the proximate cause of their deaths.

### i) Duty of Care

The plaintiffs argue that two regulations with the "force of law" created specific duties that the Corps owed to the decedents.  *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), states:  "It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the force and effect of law."  *Id.* at 295 (internal quotation marks omitted).   To have the force and effect of law, a regulation must have certain characteristics and be the product of certain procedural prerequisites.  *See id.* at 301.  Also, a regulation must be a substantive rule and not an interpretative rule, general statement of policy, or rule of agency organization, procedure, or practice.  *See id.* at 301-02. Beyond being substantive, a regulation "must be rooted in a grant of [quasi-legislative] power by the Congress and subject to limitations which that body imposes" to have the "force of law."  *Id.* at 302.

Plaintiffs contend that two regulations had the force of law and created specific duties that the Corps breached. Accordingly, they argue that the *Pennsylvania* doctrine applies.   The *Pennsylvania* doctrine holds that when a statutory rule intended to prevent an admiralty accident exists and a party violates that statute injuring a party whom the statute was created to protect, the violating party, to avoid liability, must show that its violation *could not have been* the cause of the accident.  *The Pennsylvania*, 86 U.S. 125, 136 (1873).  The plaintiffs argue that because the Corps violated regulations created to protect the decedents, it must demonstrate that its violation of those regulations *could not have been* the cause of the decedents' accident to escape liability.

The plaintiffs contend that the Corps owed a duty to the decedents pursuant to 33 C.F.R. § 207.300(s):

*Restricted areas at locks and dams*.  All waters immediately above and below each dam, as posted by the respective District Engineers, are hereby designated as restricted areas.  No vessel or other floating craft shall enter any such restricted area at any time.  The limits of the restricted areas at each dam will be determined by the responsible District Engineer and marked by signs and/or flashing red lights installed in conspicuous and appropriate places.

But, as we held in *Gemp v. United States*, 684 F.2d 404, 408 (6th Cir. 1982), § 207.300(s) creates a duty for boaters, not for the Corps.  The initial decision whether to post restricted areas is discretionary and, because it is discretionary, it is not subject to review under the SIAA.  *See id.*  Therefore, the plaintiffs' argument that § 207.300(s) created a duty for the Corps is meritless.   Since the Corps did not violate § 207.300(s), the *Pennsylvania* doctrine does not apply.

Additionally, the plaintiffs contend that a second regulation, Engineering Regulation 1130-2-341 ("ER 341"), created another duty that the Corps breached.  Specifically, they contend that, pursuant to ER 341, the Corps had a duty to