NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0184n.06
Filed: December 21, 2004

**No. 03-6208**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| Charles Hartley, Owner/Operator of the M/V Nina's Casino )<br><br>)<br>Petitioner-Appellant, )<br><br>)<br>v. )<br><br>)<br>St. Paul Fire & Marine Insurance Company, )<br><br>)<br>Plaintiff-Appellee, )<br><br>)<br>The Travelers Indemnity Company of )<br>Illinois, )<br><br>)<br>Intervenor-Appellee, )<br><br>)<br>Erie Insurance Group, )<br><br>)<br>Defendant-Appellee. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

**Before: RYAN, COLE and ROGERS, Circuit Judges.**

**Rogers, Circuit Judge.** Charles Hartley, the owner and operator of the M/V Nina's

Casino, appeals a determination he was negligent in causing a fire aboard his houseboat that

spread and damaged seventeen vessels at the marina where he docked. Mr. Hartley argues that:

(1) the district court's finding of negligence was clearly erroneous; (2) the district court abused

its discretion in admitting the testimony of Rick Franklin while excluding the testimony of

Samuel Flowers, the deposition testimony of Robert Harshman, and two photographs taken by

Mr. Harshman; and (3) the district court erred to the extent liability was based on unseaworthiness. We affirm the district court because its finding of negligence was not clearly erroneous and the district court did not abuse its discretion in its evidentiary rulings. While the district court erred in determining that Mr. Hartley's vessel was unseaworthy, the finding of negligence is sufficient to support the judgment of liability and any error regarding the doctrine of seaworthiness is therefore harmless.

I.      Background

On January 29, 2001, just after midnight, Mr. Jack Hughes and Ms. Patricia Hughes were awakened by an explosion at the Pier 99 Marina, on the Ohio River near Warsaw, Kentucky. Mr. and Mrs. Hughes, who lived a short distance from the marina, looked out their window and saw three vessels on fire. Mr. Hughes testified that the interior of the center boat, the M/V Nina's Casino, was burning, while the exterior hulls of the boats on either side were on fire, an account confirmed by Ms. Hughes. The fire spread and severely damaged seventeen vessels and boat slips at the marina. After the fire was put out, investigators for the Commonwealth of Kentucky and various private investigators began an inquiry into the cause of the fire. The investigators focused on the M/V Nina's Casino as the origin of the fire based on Mr. and Mrs. Hughes' eyewitness accounts.

The M/V Nina's Casino was a 65 foot seagoing houseboat docked at slip 33 of the Pier 99 Marina. Mr. Hartley regularly spent weekends on the Nina's Casino during the winter

months and shared the houseboat with his cat, Daily, who freely roamed the boat year-round.[1]

To heat the boat during the winter, Mr. Hartley employed three space heaters, two of which were identified by experts as possible causes of the fire.[2] The first was an electric space heater kept in the main cabin of the boat, near the kitchen, and was used as the primary source of heat when Mr. Hartley stayed on the boat during the winter. This space heater had various safety features, including an automatic shut-off which turned the heater off if disturbed. The second was a propane space heater in the main cabin that Mr. Hartley occasionally used to "knock the chill off." Mr. Hartley left his houseboat before noon on the morning before the fire, earlier than usual. He testified that his practice was to unplug all the appliances,[3] including the main electric space heater, from a surge protector in the kitchen when he left the boat, but he could not specifically recall unplugging the main space heater that morning.

Following the fire, the Nina's Casino and the two boats docked next to her were removed from the river and investigators entered the boat to remove and catalog items with potential significance to the cause of the fire. The fire did not reach the engine compartment of the Nina's Casino, which was protected by a steel fire barrier, but the main cabin of and its contents had

---

[1]Daily was not found following the fire and is presumed dead.

[2]The district court's findings of fact refer to an energized space heater kept in the engine compartment of the Nina's Casino to prevent the water lines as freezing. This heater was not identified by experts as a cause of the fire. Experts testified that the main cabin was the origin of the fire and that a steel fire barrier helped to protect the engine compartment where the space heater referred to by the district court was stored.

[3]Mr. Hartley did testify that a hood light for the stove remained plugged into the strip at all times.

been damaged severely. The electric space heater in the main cabin was severely damaged, but was recovered with the control switch in the "on" position. Investigation of the fire scene also revealed evidence of short-circuiting in the electrical systems of two of the first three ships to catch fire, as well as the dock between slips 33 and 34, where the three ships were moored.

Based on the available evidence from the Nina's Casino, Mr. and Ms. Hughes' statements and an analysis of the burn pattern aboard the Nina's Casino, the experts who investigated the fire came to different conclusions as to its origin and cause. Rick Franklin, the expert for appellee Travelers Indemnity Company (Travelers), concluded that the fire originated in the living quarters of the Nina's Casino and that the fire was caused by the electric space heater in the main cabin being left on and coming into contact with a combustible material. Danny Stivers, a Kentucky state arson investigator, and Samuel Flowers, a Kentucky state fire marshal, could not determine the cause of the fire from the available evidence. Both experts retained by Mr. Hartley testified that the fire originated on the boat docked next to the Nina's Casino, but could not determine a cause.

Mr. Hartley petitioned for exoneration or limitation of liability under the Limitation of Liability Act. 46 U.S.C. app. § 181, et seq. (2000), and several claimants stepped forward to seek damages from Mr. Hartley. Briefly stated, the purpose of the Limitation of Liability act is to encourage shipping by eliminating or limiting, in certain cases, liability for losses or damage incurred without the "privity or knowledge" of the owner. *In re Muer*, 146 F.3d 410, 414 (6th Cir. 1998). A limitation action involves a two step inquiry: (1) whether the loss was caused by

negligence or unseaworthiness; and, if so, (2) whether the vessel owner was privy to or had knowledge of the cause of the loss. *Id.* at 415. If the owner, his vessel, and crew are free of fault in causing the loss, the owner is entitled to exoneration. *In re Cleveland Tankers*, 67 F.3d 1200, 1203 (6th Cir. 1995). Even if not completely free of fault, if the vessel owner has no knowledge of or privity to the ship's negligence or unseaworthiness, the owner's liability is limited to the value of the ship and its cargo. *Id.* The claimant in a limitation action bears the burden of proving the negligence or unseaworthiness. *See Id.*

The district court bifurcated the case between liability and damages and held a bench trial on liability. Following the liability phase of the trial, the district court issued findings of fact and conclusions of law denying Mr. Hartley's petition for exoneration or limitation from liability and finding him negligent in causing the fire. The district court relied on the expert testimony of Rick Franklin to support its finding of negligence. Specifically, the district court concluded that Mr. Hartley was negligent in leaving an energized space heater aboard the boat unattended with an unrestrained cat and that this was the actual and proximate cause of the fire. The court inferred that Mr. Hartley left the heater on to keep Daily (the cat) warm on a day when the temperature was in the high twenties.[4] In addition, the district court concluded that the Nina's Casino was unseaworthy and that the unseaworthy condition of the boat caused the loss, apparently as an alternative ground for denying the petition for exoneration or limitation of

---

[4]Although not specifically stated by the district court, the court appeared to infer further that Daily, much like Mrs. O'Leary's cow, started the fire by disturbing the space heater.

liability. Mr. Hartley appeals the district court's finding of liability.[5]

II.     Analysis

   A.     The District Court's Finding of Negligence

Although the evidence was slim and the issue accordingly close, the district court did not clearly err in finding both negligence and causation in this case. Following a bench trial, the findings of fact of a district court will be set aside only if clearly erroneous. FED. R. CIV. P. 52(a). Reversal is warranted "when although there is evidence to support [the factual finding of the district court], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In admiralty cases, negligence and causation are factual determinations reviewed under the clearly erroneous standard. *See Grosse Ile Bridge Co. v. Am. S.S. Co.*, 302 F.3d 616, 621 (6th Cir. 2002) (citing *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 405 (5th Cir.1982)).

Although this case is brought under admiralty jurisdiction, we apply ordinary common law tort concepts. Of course, substantive maritime law applies to a cause of action brought in admiralty, and general maritime law provides the elements of negligence in the absence of statutory modification. *E. River S.S. Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 864

---

[5]Interlocutory appeals are allowed in admiralty cases. 28 U.S.C. § 1292(a)(3) (2000).

(1986). However, under the general maritime law, the elements of negligence are generally the same as a common law negligence action, i.e. duty, breach, causation and damages. *See Pearce v. United States*, 261 F.3d 643, 647-48 (6th Cir. 2001); 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 5-2 at 183 (4th ed. 2004).

As with many negligence cases, the elements of the tort are much easier to state than to apply to a given set of facts, especially where a question of causation is raised. Mr. Hartley argues that the district court clearly erred in finding that the fire was caused by the ignition of some combustible material by the energized space heater in the main cabin. Specifically, Mr. Hartley argues that the district court's finding of negligence was clearly erroneous because: 1) the district court ignored evidence that the space heater, alleged to be the cause of the blaze, was unplugged; and 2) the testimony of Travelers' expert, Rick Franklin, was insufficient to establish that the space heater aboard the Nina's Casino was the actual or proximate cause of the fire.

First, the district court's finding of negligence in leaving a space heater energized was not clearly erroneous. Mr. Hartley admits that leaving an energized space heater unattended is an unsafe boating practice and therefore negligent. However, he relies on his testimony that his habit was to unplug all of the appliances prior to leaving the boat to argue that the district court was clearly erroneous in finding that the space heater was actually energized. However, Mr. Hartley testified he could not remember unplugging the space heater the morning before the fire, and the evidence showed the space heater's control switch was in the on position. It was well within the province of the district court, as trier of fact, to reject Mr. Hartley's testimony based

on the undisputed fact that the space heater's control switch was in the on position, combined with the evidence that the fire started in the cabin where the space heater was located. Therefore, the district court did not clearly err in finding that Mr. Hartley breached his duty of care.

Second, the district court did not clearly err in determining that the energized space heater was the actual and proximate cause of the fire, based on the expert testimony of Rick Franklin. Given that, "[b]y the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence, and expert testimony[,]" the reliance on expert testimony to support a common sense inference is not clearly erroneous. *Minerals & Chems. Philipp Corp. v. S.S. Nat'l Trader*, 445 F.2d 831, 832 (2d Cir. 1971). Further, the evidentiary requirement for causation is less when there is evidence both of negligence and of the very harm that made the activity negligent in the first place (here, fire from a negligently unattended space heater). *See* DAN B. DOBBS, THE LAW OF TORTS § 173 p. 420 ("if the defendant's conduct is deemed negligent for the very reason that it creates a core risk of the kind of harm suffered by the plaintiff, then it is often plausible to infer causation in fact"); *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL HARM § 28 cmt. b (Tent. Draft No. 2, March 25, 2002) (citing David W. Robertson, *The Common Sense of Cause in Fact*, 75 TEX. L. REV. 1765, 1774-75 (1997); *Kwasny v. United States*, 823 F.2d 194 (7th Cir. 1987); Charles E. Carpenter, *Concurrent Causation*, 83 U. PA. L. REV. 941, 943 (1935)). The combination of the destruction of much of the direct evidence that would prove causation and the expert testimony

placing the origin of the fire in the main cabin of the Nina's Casino near the space heater

sufficiently support the district court's conclusion that the energized space heater in the main

cabin was the actual and proximate cause of the fire.  Therefore, the district court's

determination that Mr. Hartley's negligence caused the fire is not clearly erroneous.

B.      The District Court's Evidentiary Rulings.

Moreover, none of the district court's evidentiary rulings challenged on appeal warrants

reversal.  Mr. Hartley objected to the district court's decisions: (1) to admit Rick Franklin's

expert testimony that the electrified space heater was the cause of the fire; (2) to exclude the

expert testimony of Samuel Flowers as a sanction for failing to appear at his deposition;  and (3)

to exclude the deposition testimony of Robert Harshman and photographs taken by him.  In each

case, the evidentiary rulings of the district court are reviewed for abuse of discretion.  *Bowman v.*

*Corrections Corp. of America*, 350 F.3d 537, 547 (6th Cir. 2003).

1.      Expert Testimony of Rick Franklin

The district court did not abuse its discretion by admitting Rick Franklin's expert

testimony on the cause of the fire.  Mr. Franklin's opinion meets the standard for admissibility

under Federal Rule of Evidence 702.  The inability to eliminate other causes of the fire or state

with certainty the source of the accelerant go the reliability of his conclusions, not to the

admissibility of his opinion.  The admissibility of expert testimony is governed by a two step

inquiry.  The district court must determine (1) that the expert testimony is scientifically valid,

based on scientific technical or other specialized knowledge, and, if so, (2) that the testimony

will assist the trier of fact to understand or determine a fact in issue. FED. R. EVID. 702; *Daubert*

*v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *Jahn v. Equine Servs., PSC*, 233 F.3d

382, 388 (6th Cir. 2000). Testimony may be admitted when "an expert, whether basing

testimony on professional studies or personal experience, employs in the courtroom the same

level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An opinion on causation need not eliminate all

other possible causes of the injury and the fact that other causes are not eliminated or a precise

cause is not stated go to the accuracy of the conclusion, not the soundness of the methodology.

*Jahn*, 233 F.3d at 390. Mr. Franklin's expert testimony meets this standard and the district court

did not abuse its discretion in admitting his testimony.

### 2. Expert Testimony of Mr. Samuel Flowers

The exclusion of the testimony of Mr. Samuel Flowers, a Kentucky state fire marshal, as

a sanction for failing to appear at his deposition was harmless regardless of whether the district

court ruled properly in excluding the testimony. When Mr. Hartley called Mr. Flowers to testify,

counsel for Travelers objected claiming prejudice. The parties had agreed to divide

responsibility for noticing and arranging the depositions of fact witnesses. Counsel for Mr.

Hartley noticed Mr. Flowers deposition, but when he failed to appear counsel for Mr. Hartley did

not reschedule his deposition. When Mr. Hartley called Mr. Flowers' at trial, the district court

excluded his testimony ruling, "If [Mr. Flowers] didn't come to discovery he ain't coming

today."[6]  However, the district court considered Mr. Flowers opinion as the district court referred to the testimony in its findings of fact and conclusions of law.  The fact that the district court considered Mr. Flowers testimony renders harmless any error in excluding the testimony.

### 3.    The Exclusion of Evidence Associated with Robert Harshman

The district court did not abuse its discretion by excluding the deposition testimony of Robert Harshman or photographs taken by him.  Because it does not appear from the record that Mr. Hartley attempted to introduce any deposition testimony of Mr. Harshman, but rather only the photographs, Mr. Hartley's argument that the district court erred in excluding Mr. Harshman's deposition testimony is without merit.  Similarly, while the district court's reasoning is not clear, Mr. Hartley could not produce Mr. Harshman at trial to authenticate the photographs, nor did he attempt any other means of authentication.  Like other evidence, photographs must be authenticated prior to being admitted into evidence. *See* FED. R. EVID. 901; *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982).  The district court was within its discretion when it refused to accept the unauthenticated photographs into evidence as authentication is a necessary precondition to admissibility.  *See Blackwell*, 694 F.2d at 1329-30.

---

[6]After the district court excluded Mr. Flowers testimony, counsel for Mr. Hartley took his testimony by avowal.  Testimony by avowal is the equivalent of an offer of proof under the Federal Rules of Evidence. *Compare* KY. R. CIV. P. 43.10 *with* FED. R. EVID. 103(a)(2). The purpose is to preserve the substance of the excluded evidence for appeal.

C.      Seaworthiness

It is true that the district court erred to the extent that its finding of liability was predicated on the conclusion that Mr. Hartley's vessel was "unseaworthy." *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 629 (1959) (doctrine of seaworthiness serves to protect only crew members and a small class of shore-workers); *see also* 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 5-9 at 229 (4th ed. 2004). However, in the context of this case, any such error is harmless.  Mr. Hartley is not entitled to exoneration or limitation of liability because the district court did not clearly err in determining  he was negligent in causing the fire, and the finding of unseaworthiness was entirely unnecessary to the liability determination.

III.    Conclusion

For the foregoing reasons, the district court's finding of liability is AFFIRMED.