**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0520n.06
Filed: August 22, 2008

Nos. 07-3039/07-3040

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BARBARA ROGERS and JULIAN ROGERS, as owners of the M/V Maggie Lou, for exoneration from or limitation of liability, | ) ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiffs-Appellees/ | ) | STATES DISTRICT COURT FOR THE |
| Cross-Appellants, | ) | NORTHERN DISTRICT OF OHIO. |
| | ) | |
| v. | ) | |
| | ) | |
| DIANE LILLY, administratrix of the estate of Robert C. Lilly, | ) ) | |
| | ) | |
| Defendant-Appellant/ | ) | |
| Cross-Appellee. | | |

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellees Barbara and Julian Rogers

("the Rogerses"), filed the instant maritime action seeking exoneration from liability, or,

alternatively, limitation of liability, pursuant to 46 U.S.C. App. § 183, for any claims arising out of

the drowning death of Robert C. Lilly in Lake Erie. Defendant-appellant Diane A. Lilly,

administratrix for the estate of Robert Lilly, appeals the district court's grant of summary judgment

in favor of the Rogerses, which fully exonerated them from liability. In a cross-appeal, the Rogerses

argue that the district court erred in failing to strike certain hearsay statements and an expert report.

1

For the reasons set forth below, we affirm the judgment of the district court with respect to Diane Lilly's appeal. Additionally, we dismiss the Rogerses' cross-appeal for lack of jurisdiction.

I.

Barbara Rogers and her son, Julian Rogers, own the *Maggie Lou*, a 1992 33' Carver pleasure vessel. On September 1, 2002, the *Maggie Lou* was docked at the Intercity Yacht Club in Cleveland, Ohio, to which both Barbara and Julian belonged. The *Maggie Lou* was assigned to slip 38 along "A Dock" at the Yacht Club. The vessel was docked such that its rear, from which a swim platform protruded, was adjacent to A Dock. A smaller "finger dock," perpendicular to the larger A Dock, extended alongside the boat, where the embarkation/disembarkation point was situated.

The Yacht Club held its annual clam bake on September 1. Barbara Rogers invited several friends to this event, including Loretta Childs. Julian Rogers did not attend. Robert Lilly, a friend of Childs, arrived at the Yacht Club around 8:00 p.m. that evening, after the dinner was over. Between 8:45 and 9:00 p.m., Barbara Rogers brought Childs and Lilly, as well as some other friends, to the *Maggie Lou*. At approximately 9:45 p.m., Barbara Rogers left the boat to drive a friend home. Only Childs and Lilly remained on the boat, as Lilly was not yet ready to leave.

Around 11:15 to 11:30 p.m., Lilly and Childs decided to leave the boat. According to Childs' deposition testimony, when Lilly prepared to get off the boat, Childs asked Lilly if he wanted a soda. Childs turned away to get the soda and then heard a splash. After Childs heard the splash, she called out for Lilly and disembarked from the boat. Childs yelled for help, and, after several minutes, she saw Lilly floating in the water at the rear of the boat. Two Yacht Club members, Ernest Shawver and Kendrick Melton, attempted to save Lilly or pull him from the water but were unsuccessful.

2

Cleveland Fire Department employees recovered Lilly's body at 11:50 p.m., and Lilly was taken to a hospital, where he was pronounced dead upon arrival.

At the time of the incident, Shawver was on his boat, located approximately three finger docks away from the *Maggie Lou*. At a deposition, Shawver testified that he saw Lilly walking on A Dock just before Lilly fell into the water. Shawver noted that a lady on the Rogerses' boat was speaking to Lilly, and Shawver heard Lilly replying to the lady. Shawver turned away and then heard a splash. Upon hearing the splash, Shawver looked up, but he did not see Lilly. Shawver heard Childs' screams and ran out to the dock. Shawver saw Lilly flailing in the water near the *Maggie Lou's* swim platform—which is on rear of the boat, adjacent to A Dock—and reached for his arm; however, he was unable to pull Lilly from the water. Shawver did not give a witness statement at the scene.

Officers from the Ohio Department of Natural Resources ("ODNR") arrived on the scene of the accident shortly after it occurred. Officer James Sapio of the ODNR, who arrived approximately ten to fifteen minutes before Lilly's body was pulled from the water, spoke with Childs at the scene. Sapio's "Investigative Action" report states: "While at the scene, a witness came forward and stated that she was on the boat with the victim and that when he was stepping off the boat, he slipped and fell into the water." The report identifies the witness as Loretta Childs and lists her date of birth, her social security number, and her phone number. Sapio also later testified at a deposition that Childs stated that Lilly had fallen off the boat. Sapio noted that this was significant, for, if Lilly had fallen off the dock rather than the boat, the Cleveland Police Department, not the ODNR, would have jurisdiction over the accident. Childs, however, repeatedly asserted in later deposition testimony that

3

she had "no idea" from what location Lilly fell into the water, as she had turned away to get Lilly a soda.

Officer Sapio left the scene by 12:18 a.m., and another ODNR officer, James Gorman, arrived shortly thereafter. Gorman testified that, upon his arrival at the scene, park rangers informed him that Lilly "had fallen off of either the dock or the boat, they were unsure at that time." Gorman explained that they could not find any witnesses who had actually seen Lilly fall. He stated, "We have no idea if he fell from the boat, the steps or the dock." Gorman also noted that he spoke with Childs either that night or the next morning, and she indicated that she had not actually seen Lilly exit the boat, as she had gone to get him something to drink. Gorman's records indicate, in various places, that Lilly "fell from boat," "slipped off dock or boat while exiting," and "fell between boat and the dock into the water."

James Wilson, a maritime expert witness relied upon by Diane Lilly, concluded, based on the official reports of ODNR and the Cleveland police, that Lilly fell from the *Maggie Lou* into the water at the embarkation/disembarkation location (which is adjacent to the finger dock). Wilson also opined that the *Maggie Lou* was improperly moored and that this improper mooring caused Robert Lilly's fall.

Diane Lilly commenced a wrongful death action against Barbara and Julian Rogers in Ohio state court on August 30, 2004. On October 22, 2004, the Rogerses initiated the instant limitation of liability action in federal district court. Accordingly, on November 17, 2004, the district court, pursuant to 46 U.S.C. App. § 185 (current version at 46 U.S.C. § 30511), enjoined Diane Lilly from proceeding further in the state court action. The Rogerses filed a motion for summary judgment on

October 13, 2005, seeking exoneration from liability on the ground that there was no evidence from which to conclude that any negligence on their part proximately caused Robert Lilly's fall. In turn, Diane Lilly filed a cross-motion for summary judgment and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Rogerses subsequently filed a reply memorandum as well as a motion to strike. The Rogerses' motion sought to strike: (1) all statements of Loretta Childs contained in the reports of the ODNR and the Cleveland Police Department; (2) the testimony of Officers Gorman and Sapio regarding any statements made by Loretta Childs; (3) the affidavit and report of Diane Lilly's expert, James Wilson, as well as all references therein to reports of the ODNR and the Cleveland Police Department, and all photographs of the *Maggie Lou* taken by the Cleveland Police Department. Diane Lilly filed a brief in opposition to the motion to strike.

On November 17, 2006, the district court granted summary judgment in favor of the Rogerses and exonerated them from all liability arising out of Robert Lilly's death. Explaining that "there is no actual evidence, whether direct or circumstantial, that [Lilly] fell from the boat," the court concluded that there was no genuine issue of material fact as to proximate causation. Additionally, with respect to the motion to strike—which asserted that all references to Childs' statements were hearsay—the court determined that it "need not reach the hearsay issue because, as concluded above, the content of such documents is insufficient to create a genuine issue of material fact on causation." The court accordingly denied the Rogerses' motion to strike as moot.[1]

---

[1]The district court also denied Diane Lilly's Rule 12(b)(6) motion to dismiss for failure to state a claim. Lilly does not appeal this determination.

5

Diane Lilly filed a timely notice of appeal on December 14, 2006. On December 27, 2006,

the Rogerses filed a cross-appeal from the district court's denial of their motion to strike as moot.

II.

We review a district court's grant of summary judgment *de novo*.[2] *Michael v. Caterpillar*

*Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Summary judgment will be affirmed if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c). If "a reasonable jury could return a verdict for the nonmoving party," summary

judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

---

[2]The Rogerses contend that we should apply a clearly erroneous standard of review to the district court's grant of summary judgment. This argument is meritless. The First Circuit cases cited by the Rogerses in support of this proposition applied a clearly erroneous standard of review based on "[c]ircuit precedent" in "unique" situations presenting "special circumstances." *See Equal Employment Opportunity Comm'n v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 & n.8 (1st Cir. 1995). According to First Circuit precedent, clearly erroneous review may be applied in non-jury cases when "the parties [] decide that the pre-trial record establishes all the necessary grounds upon which a judge may enter a final ruling on one or all of the issues in dispute," thus, "in essence, skipping trial and proceeding directly to judgment, submitting the case as stated." *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 644 (1st Cir. 2000). In the instant case, however, there is no evidence that the parties intended to "willingly forego[] their right to a full trial." *Id.* at 644 n.5 (quoting *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143 (2d Cir. 1998)). To the contrary, there is ample evidence that the parties explicitly consented *only* to a Rule 56 summary judgment determination. Both parties' district court briefs cited the summary judgment standard, as did the district court's opinion.

The Rogerses, moreover, fail to cite any Sixth Circuit precedent adopting the clearly erroneous standard of review that they urge the panel to utilize. Indeed, this court has previously used the *de novo* standard in reviewing a district court's grant of summary judgment in a maritime limitation of liability action. *See Clinton River Cruise Co. v. DeLaCruz*, 213 F. App'x 428, 430 (6th Cir. 2007).

In reviewing the decision of the district court, we draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. In ruling on a motion for summary judgment, "[t]he judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 255).

III.

The Rogerses filed the instant case pursuant to the Limitation of Liability Act, 46 U.S.C. App. §§ 183-189 (2005) (current version at 46 U.S.C. § 30501 *et seq.*). This statute, enacted in 1851, limits the liability of a ship owner to the value of the owner's interest in a vessel and the vessel's freight, if the maritime accident at issue occurred without "privity or knowledge" of the owner. 46 U.S.C. App. § 183(a); *In re Muer*, 146 F.3d 410, 414 (6th Cir. 1998). Moreover, "a ship owner is entitled to exoneration if he, his vessel, and crew are found to be completely free of fault." *In re Cleveland Tankers, Inc.*, 67 F.3d 1200, 1203 (6th Cir. 1995). This court has held that the limitation of liability provisions of the statute apply to pleasure vessels. *In re Young*, 872 F.2d 176, 176 (6th Cir. 1989).

The evaluation of a claim under the Limitation of Liability Act involves a two-step inquiry. *In re Muer*, 146 F.3d at 415-16; *see also In re Cleveland Tankers, Inc.*, 67 F.3d at 1203. First, the court must determine what acts of negligence or unseaworthiness caused the accident. *In re Muer*, 146 F.3d at 415. The person claiming to be injured—here, Lilly—carries the burden of demonstrating negligence. *In re Cleveland Tankers, Inc.*, 67 F.3d at 1203. If the allegedly injured

7

claimant fails to establish negligence, then the ship owner is entitled to exoneration. *Id.* However, if the claimant establishes negligence, the burden then shifts to the ship owner to prove lack of knowledge or privity. *Id.* Upon satisfying this burden, the ship owner is entitled to limitation of liability. *Id.*

In an admiralty proceeding, a negligence claim consists of essentially the same elements as common law negligence claim. *Ginop v. A 1984 Bayliner 27' Cabin Cruiser*, 242 F. Supp. 2d 482, 485 (E.D. Mich. 2003) (citing *Pearce v. United States*, 261 F.3d 643, 647-48 (6th Cir. 2001)). Thus, the claimant must demonstrate: (1) the existence of a duty of care owed by the ship owner to the claimant; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury, or proximate cause; and (4) actual damages. *Id.* In the instant action, the district court determined that the Rogerses owed a duty of care to their guests. Additionally, the court concluded that Diane Lilly's proffered expert report created a justiciable issue as to whether the vessel was moored properly—*i.e.*, whether the Rogerses had breached their duty of care. As to proximate causation, however, the court found no genuine issue of material fact. The court explained, "there is no actual evidence, whether direct or circumstantial, that the decedent fell from the boat," rather than the dock. Accordingly, the district court granted summary judgment to the Rogerses, thereby exonerating them from any liability arising from Robert Lilly's death. It is upon the issue of proximate causation that Diane Lilly's appeal rests.

On appeal, Diane Lilly argues that there was, in fact, sufficient evidence on the issue of causation to create a genuine issue of material fact, thereby precluding summary judgment. To support this claim, Diane Lilly points to several pieces of evidence in the record: (1) Officer Sapio's

testimony that, shortly after the incident, Childs told him that Robert Lilly fell into the water when he was stepping off the boat; (2) Sapio's ODNR report recording Childs' statement; (3) Officer Gorman's testimony that Childs told him Robert Lilly fell into the water while getting off the boat; and (4) Gorman's ODNR report recording this statement. We note that a significant portion of Diane Lilly's brief is devoted to arguments concerning the admissibility of these pieces of evidence. Although the parties addressed the evidentiary issues in various briefs to the district court, the court declined to reach the merits of these issues in its opinion granting summary judgment. Rather, the district court concluded that, even without reaching the question of admissibility, the evidence presented was "insufficient to create a genuine issue of material fact on causation."

Like the district court, we conclude that the evidence in the record does not create a genuine issue of material fact as to the element of causation—*i.e.*, as to whether Robert Lilly fell from the dock or from the *Maggie Lou*.[3] "The mere existence of a scintilla of evidence in support of [the non-moving party's] position [is] insufficient" to create a genuine issue of material fact precluding summary judgment. *Anderson*, 477 U.S. at 252. In the instant case, Childs testified repeatedly at her deposition that she did not know the location from which Lilly fell, as she had turned away to get a soda. Shawver, the only other witness in the vicinity of the accident, testified at deposition that he saw Lilly on A Dock, speaking to Childs on the boat; subsequently, after Shawver had looked

_____

[3]Because we conclude that the evidence is insufficient to create a genuine issue of material fact, we need not resolve the issues concerning admissibility of the evidence. If, however, we had concluded that a fact issue existed based on the questioned evidence, then we would have had to resolve the issues of admissibility. *See Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001) ("[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994))).

away, he heard a splash. Childs' and Shawver's deposition testimony, then, permit us to draw only one conclusion: Robert Lilly fell from A Dock, rather than from the *Maggie Lou*.

This conclusion is consistent with an additional fact provided in Shawver's testimony: Shawver found Lilly flailing in the water in the area between A Dock and the swim platform. And as the district court noted, the pictures of the *Maggie Lou* included in the record indicate that there was more space into which a person could fall between the swim platform and A Dock than there was between the finger dock and the boat—the disembarkation location, from which Diane Lilly alleges that Robert Lilly fell. As the district court observed, "Diane Lilly offers no explanation based on this evidence as to how Robert Lilly . . . could have gotten behind the boat from where she alleges he fell."

We are not persuaded by Diane Lilly's contention that the hearsay statements allegedly made by Childs shortly after the incident, and recorded by Officers Sapio and Gorman, permit the inference that Robert Lilly fell from the boat or while disembarking from the boat. Sapio's investigative report states that, according to Childs' statement made at the scene, Lilly fell "when he was stepping off the boat." During a deposition, Sapio testified that Childs said Lilly fell when "they were coming ashore stepping off onto the dock," although later Sapio agreed that Lilly "fell from the boat." Gorman's reports and testimony are even less helpful to Diane Lilly. Gorman's reports indicate, in various places, that Lilly "fell from boat," "slipped off dock or boat while exiting," and "fell between boat and the dock into the water." Gorman testified that the park rangers at the scene could not find any witnesses who had actually seen Lilly fall; he stated, "We have no idea if he fell from the boat, the steps or the dock." Furthermore, Gorman noted that he interviewed Childs either the night of

the incident or the next morning, and she indicated that she had not actually seen Lilly exit the boat, as she had turned away to get him something to drink.

This evidence is, at best, inconclusive, particularly since it does not indicate that Childs said she *saw* Lilly fall from the boat. If the officers in fact accurately reported Childs' statements, Childs may have been making an assumption or unsupported conclusion about the place from which Lilly fell. Indeed, Childs herself repeatedly asserted in her own deposition testimony that she did not see Lilly's fall. Quite simply, Childs' statements, as reported by Sapio and Gorman, do not permit an inference that Robert Lilly fell from the boat, rather than from the dock. Conversely, Shawver's testimony does allow an inference to be drawn: that Robert Lilly fell from A Dock, rather than from the boat.

Nor does the expert testimony offered by Diane Lilly advance her position. According to Diane Lilly's expert, James Wilson, the *Maggie Lou* was improperly moored; in his report, Wilson explained that the absence of a properly adjusted dock line or a failure to cross the dock lines (which moor the boat to the dock) would result in either the bow's or the stern's moving further from the dock than the other end of the vessel. Even assuming this improper mooring, however, Diane Lilly has provided no evidence that it had anything to do with Robert Lilly's fall. Indeed, as noted above, Lilly was found struggling in the water behind the boat, not at the embarkation/disembarkation point—which suggests that he did not fall from the embarkation/disembarkation point, contrary to the assertion of Wilson's expert report. The evidence provided by Diane Lilly permits only speculation about how the accident happened and does not permit an inference that improper mooring caused Robert Lilly to fall from the boat at the embarkation/disembarkation point.

11

Thus, we conclude that the evidence is "so one-sided that [the Rogerses] must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Accordingly, like the district court, we need not reach the question of the admissibility of Childs' hearsay statements and Wilson's expert report.

IV.

The Rogerses cross-appeal the judgment of the district court, which exonerated them from all liability. The cross-appeal, which arises out of the district court's denial of the Rogerses' motion to strike as moot, presents two issues: (1) whether the district court erred in failing to strike those portions of the investigators' reports attributed to Childs; and (2) whether the district court erred in failing to strike Diane Lilly's expert report and opinion. Because, however, the Rogerses prevailed in all respects before the district court, we lack jurisdiction over the cross-appeal. *See ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000) ("It is a well settled principle that a prevailing party cannot appeal an unfavorable aspect of a decision in its favor.").

V.

For the foregoing reasons, we affirm the judgment of the district court with respect to Diane Lilly's appeal. The Rogerses' cross-appeal is dismissed for lack of jurisdiction.

**COLE, Circuit Judge, dissenting.** Because there are crucial discrepancies between the parties' versions of what happened on the *Maggie Lou*—creating a textbook "genuine issue of material fact"—I believe summary judgment is inappropriate. I respectfully dissent.

As the majority notes, the question in this case is one of proximate cause: whether the Rogerses' alleged negligence proximately caused Robert Lilly to fall to his death. In other words, the critical issue is whether Lilly fell from the boat, for which the Rogerses would be liable if the boat was moored improperly, or whether Lilly fell from the dock, for which the Rogerses would not be liable. Assuming without deciding, as did the majority and the district court, that the proffered evidence is admissible, I cannot agree that "it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Indeed this is a classic case in which the "evidence presents a sufficient disagreement to require submission to a jury." *Id*.

First, Officer Sapio's report states, "While at the scene, a witness [Childs] came forward and stated that she was on the boat with the victim and that when he was stepping off the boat, he slipped and fell into the water." Not only did Sapio later testify in depositions that Childs made this statement immediately after the accident and before Lilly's body had been recovered, but Sapio also had reason to inquire carefully into and record this information: as an officer of the Ohio Department of Natural Resources ("ODNR"), he would only have jurisdiction over the matter if Lilly fell from the boat; if Lilly instead fell from the dock, the Cleveland Police Department would have jurisdiction. Second, Officer Gorman, a member of ODNR's Watercraft Division, reported that Lilly "fell from the boat." Third, the Watercraft Division investigation report, which notably labels the

13

incident as a "Fall Overboard," concluded, "As [Lilly] attempted to step on the dock he fell between [the] boat and the dock into the water."

To be certain, this evidence is not undisputed. Shawver testified that he saw Lilly on the dock and then heard a splash, leading to the conclusion that Lilly fell from the dock. In addition, Childs testified at her deposition that she did not in fact know the location from which Lilly fell despite telling the investigative officers on the scene that Lilly had fallen as he was stepping off the boat. And there is testimony that Lilly was found in the water in the area between the dock and the boat, and not between the boat and the point of disembarkment; yet, this is only a difference of several feet, which Lilly could have traveled during his struggle.

In sum, although there is ample evidence from which a jury could conclude that Lilly fell from the dock, there is also considerable evidence that he fell from the boat. But, drawing all facts and reasonable inferences therefrom in the light most favorable to Lilly, as we must, I cannot agree that there is only one permissible conclusion. Indeed, to come to only one conclusion, in the face of this conflicting evidence, the district court must have weighed the evidence and made credibility determinations, functions which are solely within the province of the jury. *Anderson*, 477 U.S. at 255.

Because this case presents genuine issues of material fact, only suitable for a jury to decide, I would hold that the Rogerses are not entitled to summary judgment, and would remand to the district court so that it may decide the evidentiary issues in the first instance.